**SO ORDERED.**

**SIGNED this 4 day of December, 2013.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                                          CASE NO.

BATE LAND & TIMBER, LLC                                                    13-04665-8-SWH

    DEBTOR

### ORDER REGARDING OBJECTION TO CLAIM AND MOTION TO SET ASIDE SPECIAL WARRANTY DEED

The matter before this court is the objection of the debtor, Bate Land & Timber, LLC, to the proof of claim filed by Bate Land Company, LP ("Bate Land Company"). Also before this court, and central to the determination of debtor's objection to claim, is the motion of Bate Land Company to set aside special warranty deed. A hearing took place on October 16, 2013, in Raleigh, North Carolina.

The parties are in relative agreement regarding the facts of this case. On April 14, 2006, the debtor and Bate Land Company entered into an Agreement for Purchase and Sale of Non-Residential Real Property for the sale of real property to the debtor consisting of approximately seventy-nine tracts of land located throughout Beaufort, Brunswick, Craven, Duplin, Jones, Onslow, Pamlico, Pender, and Pitt counties, North Carolina, and totaling almost 17,000 acres, (the "Purchase Contract"). The purchase price under the Purchase Contract was $65,000,000; the debtor was to pay $9,000,000 in cash at closing, with the remaining balance financed by Bate Land Company and

secured by purchase money deeds of trust. On September 8, 2006, the debtor executed a purchase money promissory note in the amount of $56,000,000 in favor of Bate Land Company, secured by purchase money deeds of trust encumbering all the land sold by the Purchase Contract. Each purchase money deed of trust was recorded in the appropriate North Carolina county and identified what specific tracts were pledged as security in that particular county. Each deed of trust also referenced the purchase money promissory note in the principal amount of $56,000,000, "of even date."

The Purchase Contract also incorporated numerous exhibits. One of them, Exhibit E, is entitled: "Scheduled Values for Exhibit C Item 7.a." and provides:

_____

Exhibit E
Scheduled Values for Exhibit C Item 7.a.

| County | Description | Approx. Acres | Scheduled Value for Exclusion Clause |
|---|---|---|---|
| Pamlico | Neuse River - Pierce Creek | 708 | 14,000,000 |
| Pamlico | Broad Creek | 212 | 4,750,000 |
| Pamlico | Bay River- Smith Creek | 408 | 8,750,000 |
| Pamlico | Goose Creek Island - Eastman Creek | 690 | 545,000 |
| Pamlico | Rodman / Caroon | 208 | 195,000 |
| Pamlico | Spring Creek | 40 | 60,000 |
| Craven | Carolina Pines - | 374 | 2,500,000 |
| Craven | Williams - (near Oakview subdivision) | 568 | 2,800,000 |

| | | | |
|---|---|---|---|
| Jones / Craven | Trent River - Island Creek | 1,850 | 8,750,000 |
| Brunswick | Mallory | 1,211 | 5,300,000 |
| Pender | Northeast Cape Fear River - Castle Hayne - Rocky Point | 750 | 3,750,000 |
| Onslow | Henderson Tract | 301 | 1,800,000 |
| Timberland | Any parcels of land not scheduled above- Various Counties | 9,629 | 11,800,000 |
| | | **16,949** | **65,000,000** |

Exhibit E lists the twelve tracts of land sold by the Purchase Contract and a category entitled "Timberland." For each of the twelve tracts and the "Timberland," Exhibit E lists that tract's acreage, the county in which it is located and the tract's "Scheduled Value for Exclusion Clause."

Over the next several years after closing on the Purchase Contract, the debtor paid down a substantial amount of the debt it owed to Bate Land Company through, *inter alia*, land sales of certain parcels pledged as collateral for the loan. Bate Land Company released such parcels from the affected deeds of trust upon payment by the debtor of the release prices set out in Exhibit F of the Purchase Contract. By July 25, 2013, the remaining balance on the note, including accrued interest, was approximately $12,936,254.65, which was secured by land located in seven North Carolina counties.

On July, 26, 2013, at approximately 2:32 p.m., the debtor recorded a special warranty deed in Pamlico County, North Carolina, that conveyed to Bate Land Company two tracts of land securing the purchase money note, commonly known as the Broad Creek and Bay River/Smith Creek tracts

("Broad Creek and Bay River tracts"). Less than two hours later, the debtor filed a petition for relief under chapter 11 of the Bankruptcy Code.

In anticipation of Bate Land Company filing a proof of claim, the debtor preemptively filed an objection to Bate Land Company's claim on September 10, 2013. On September 27, 2013, Bate Land Company filed a proof of claim in the amount of $12,924,417.87. The basis of the debtor's objection to Bate Land Company's claim is the debtor's assertion that the transfer of the Broad Creek and Bay River tracts fully satisfied the claim of Bate Land Company. Bate Land Company, on the other hand, disputes first the effectiveness of the transfer and alternatively, should the transfer be determined to be effective, the value attributed to the transfer; i.e., Bate Land Company contends the value of the land transferred is significantly less than $12,924,417.87, the amount of its proof of claim.

On September 27, 2013, Bate Land Company filed a motion to set aside the special warranty deed on the grounds that it neither solicited nor accepted the transferred tracts of land. The debtor contends that N.C. Gen. Stat. § 45-21.38 precludes Bate Land Company from refusing acceptance of the tracts of land. Finally, the debtor asserts the values set out on Exhibit E of the Purchase Contract must be ascribed to the tracts of land transferred prepetition.

The court invited and received the submission of supplemental memoranda on the issue and the matters are now ripe for review.

## DISCUSSION

Under North Carolina law, in order for the transfer of a deed to be effective, there must be:

> [a]n intention on the part of the grantor to give the instrument legal effect according to its purport and tenor; (2) the evidencing of such intention by some word or act disclosing that the grantor has put the

4

> instrument beyond his legal control, though not necessarily beyond his physical control; and (3) acquiescence by the grantee in such intention.

Ballard v. Ballard, 230 N.C. 629, 633, 55 S.E.2d 316, 319 (1949). Furthermore, "assent on the part of the grantee is presumed until the contrary is shown." Id. at 633, 55 S.E. 2d at 320.

Here, although the first two requirements appear to have been satisfied, Bate Land Company clearly does not acquiesce in the transfer. It has been express and adamant in its position that it did not and does not accept the transfer of the Broad Creek and Bay River tracts that the debtor attempted to convey by way of the special warranty deed. However, the debtor argues that the acceptance of Bate Land Company is compelled by virtue of the operation of N.C. Gen. Stat. 45-21.38, commonly known as the "anti-deficiency statute," in that when a seller of real estate finances all or a part the purchase price, the buyer may return the property it was originally conveyed in satisfaction of the obligation it owes to the seller.

N.C. Gen. Stat. §45-21.38 provides:

> In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust executed after February 6, 1933, or where judgment or decree is given for the foreclosure of any mortgage executed after February 6, 1933, to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same: Provided, said evidence of indebtedness shows upon the face that it is for balance of purchase money for real estate: Provided, further, that when said note or notes are prepared under the direction and supervision of the seller or sellers, he, it, or they shall cause a provision to be inserted in said note disclosing that it is for purchase money of real estate; in default of which the seller or sellers shall be liable to purchaser for any loss which he might sustain by reason of the failure to insert said provisions as herein set out.

5

N.C. Gen. Stat. §45-21.38 (1967). The North Carolina Supreme Court has interpreted this statute to mean that when a seller and buyer of real estate execute purchase money notes and deeds of trust, the recovery of the seller is limited to the property conveyed. See Ross Realty Co. v. First Citizens Bank & Trust Co., 296 N.C. 366, 370, 250 S.E.2d 271, 273 (1979). The "anti-deficiency statute bars any suit on [a purchase money] note, whether before or after foreclosure, and strictly limits the creditor '*to the property conveyed.*'" Adams v. Cooper, 340 N.C. 242, 244, 460 S.E.2d 120, 121(1995) (quoting Barnaby v. Boardman, 313 N.C. 565, 571, 330 S.E.2d 600, 604 (1985)).

Debtor cites Ross Realty Co., in support of its argument. In Ross Realty Co., the defendant purchased a tract of land in Charlotte, North Carolina, from the plaintiff, through financing offered by the plaintiff. The buyer executed a purchase money note in favor of the seller and the seller retained a purchase money deed of trust on the property. When the buyer later defaulted on the note, the buyer tendered its deed back to the seller in order to avoid foreclosure. Plaintiff refused to accept the deed and initiated an action to recover the balance it was owed on the note. Ross Realty Co., 296 N.C. 366, 366, 250 S.E.2d 271, 271 (1979). The North Carolina Supreme Court held that creditors may not sue upon the note in a purchase money mortgage transaction, but are instead limited to the property conveyed. Id. at 370, 373, 250 S.E.2d at 273, 275.

Similarly, in Burnette Industries, Inc. v. Danbar of Winston-Salem, Inc., 80 N.C. App. 318, 341 S.E.2d 754 (N.C. Ct. App. 1986), the defendant bought twenty-six lots of real property from the plaintiff, through financing offered by the plaintiff. The buyer executed a purchase money note in favor of the seller, secured by a purchase money deed of trust on the twenty-six lots. The buyer then made some payments on the note and sold some of the lots, and the parties executed a new note and deed of trust to reflect the remaining balance owed and the remaining lots pledged as collateral.

6

However, after the buyer defaulted on the note, the buyer requested permission from the seller to return *all* of the remaining lots to satisfy the amount of principal owed on the note.  The seller agreed, conditioned upon the payment of all interest outstanding on the note.  Id. at 319-20, 341 S.E.2d at 754-55.  The North Carolina Court of Appeals, applying the anti-deficiency statute, held that the defendant was not entitled to recover the interest on the debt because the lots had been returned in satisfaction of the purchase money note and interest was a deficiency that N.C. Gen Stat. § 45-21.38 prevented the creditor from recovering.  Id. at 320, 341 S.E.2d at 755.

The debtor argues that because the anti-deficiency statute limits the creditor's recovery to the property conveyed, the courts in Ross Realty Co. and Burnette Industries authorized the buyers in the purchase money transactions to return the property conveyed in satisfaction of the obligation owed to the seller.  By extension of that analysis, the debtor contends that the return of collateral, even without foreclosure, should satisfy the indebtedness.  However, the facts here are clearly distinguishable from both Ross Realty Co. and Burnette Industries.  In both those cases, the seller was returned *all* of the property that it had either originally conveyed or *all* the property that the creditor still held as collateral under a purchase money deed of trust.  In those cases, since the seller was reconveyed all of the real property that it originally sold, the anti-deficiency statute prevented the creditors from either suing upon the note or recovering outstanding interest on the note.  Ross Realty Co., 296 N.C. at 370, 373, 250 S.E.2d at 273, 275; Burnette Industries, 80 N.C. App. at 320, 341 S.E.2d at 755.  Here, however, although Bate Land Company originally sold approximately seventy-nine different tracts of land to the debtor and still holds valid deeds of trust on many of these tracts, the debtor attempted to return only *two* of them in full satisfaction of the obligation that it owed.  The debtor's reliance on Ross Realty Co. and Burnette Industries is misplaced and an

7

improper extension of those holdings. The court will not "require" acceptance of the special warranty deed based upon the anti-deficiency statute under the facts of this case.

However, in an attempt to bring its case back into the purview of Ross Realty Co., Burnette Industries, and the anti-deficiency statute, the debtor argues that the terms of the Purchase Contract, which incorporated Exhibit E, created a severable purchase money real estate contract in which the $65,000,000 purchase price was actually an accumulation of the purchase prices for each individual tract of land sold by the Purchase Contract. The debtor argues that the return of any specific tract of land to Bate Land Company would be deemed accepted and in satisfaction of an amount of debt equal to the value listed on Exhibit E. According to the debtor's interpretation of Exhibit E, the Broad Creek and Bay River tracts had a combined "purchase price" of $13,500,000 and therefore the return of these tracts to Bate Land Company satisfied the remaining $12,936,234.65 balance on the purchase money note. In response, Bate Land Company claims that since the purchase contract sold all of the land, collectively, for one purchase price of $65,000,000 and there were not individual purchase prices placed on the different tracts of land, it is not required to accept less than the entirety of the remaining tracts in satisfaction of the debt.

Resolving this controversy will require a detailed review of the Purchase Contract. "Section 19" of the Purchase Contract, entitled "Applicable Law," provides that "[t]his Agreement shall be construed under the laws of the State of North Carolina." Under North Carolina law, "the most fundamental principle of contract construction-[is] that the courts must give effect to the plain and unambiguous language of a contract." Johnston County v. R.N. Rouse & Co., 331 N.C. 88, 95, 414 S.E.2d 30, 34 (1992) (citing Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978)). "[I]f the meaning of the [contract] is clear and only one reasonable interpretation

exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." Woods, 295 N.C. 500 at 506, 246 S.E.2d at 777. "A contract term is ambiguous only when, 'in the opinion of the court, the language of the [contract] is fairly and reasonably susceptible to either of the constructions for which the parties contend.'" State v. Phillip Morris USA Inc., 363 N.C. 623, 641, 685 S.E.2d 85, 96 (2009) (alteration in original) (quoting Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970)).

The specific section of the Purchase Contract from which the debtor arrives at the $13,500,000 figure is Exhibit E, entitled: "Scheduled Values for Exhibit C Item 7.a." Although Exhibit E is reproduced in its entirety above, the section of Exhibit E relevant to our discussion, provides:

Exhibit E
Scheduled Values for Exhibit C Item 7.a.

| County | Description | Approx. Acres | Scheduled Value for Exclusion Clause |
|---|---|---|---|
| Pamlico | Neuse River - Pierce Creek | 708 | 14,000,000 |
| Pamlico | Broad Creek | 212 | 4,750,000 |
| Pamlico ... | Bay River- Smith Creek | 408 | 8,750,000 |
| Timberland | Any parcels of land not scheduled above- Various Counties | 9,629 | 11,800,000 |
| | | **16,949** | **65,000,000** |

9

The title of Exhibit E expressly refers to another section of the Purchase Contract: Exhibit C, Item 7a, which elaborates on the purpose of the "Scheduled Values." Exhibit C Item 7, is a paragraph entitled "Un-Marketability/Un-Insurability," and reads:

> Should any condition of title exist as to any portion of the Property which renders such portion, in the opinion of both Buyer's title insurance company and Buyer's title attorney certifying title to the same, either unmarketable or uninsurable, or both, and should said condition not be corrected or otherwise cured by Seller to the satisfaction of Buyer's title insurer and counsel within thirty (30) days of Buyer's giving notice thereof to Seller, then Buyer shall be entitled to exercise either of the following remedies:
>
> a. Buyer may elect to reject the portion of the Property for which title is deemed unmarketable, but to close on the sale of the remainder of the Property, in which event the purchase price shall be reduced by the amount specified for each parcel as shown on Exhibit E.[1]

The court finds that the meaning placed on the values in Exhibit E is clear and unambiguous. The purpose of the values listed on Exhibit E was to provide an agreed reduction in the purchase price in the event any certain parcel was deemed unmarketable or uninsurable. This meaning is evident from the cross referencing of Exhibit C Item 7.a in Exhibit E, and of Exhibit E in Exhibit C, Item 7.a, and the actual heading above the values listed on Exhibit E that reads "Scheduled Values for Exclusion Clause."

The court finds that the values listed on Exhibit E are not reasonably susceptible to the meaning offered by the debtor: that the values were actually the agreed *purchase* price for each tract of land. Although the debtor correctly notes that the combined total of the scheduled values for the

---

[1] Additionally, paragraph 7.b. afforded the buyer the remedy of rejecting all of the property in the event that any of it was deemed unmarketable or uninsurable and receive a full refund of its earnest money.

10

exclusion clause listed on Exhibit E is $65,000,000 and that the defined "Purchase Price" under the Purchase Contract is $65,000,000, this does not, by itself, show that the parties ever intended for the values listed on Exhibit E to represent the purchase price of each individual tract. The very nature of an exclusion clause requires a seller to place a set value on a particular piece of land to allow for the contract to proceed in the event that any particular parcel is deemed unmarketable or uninsurable. However, this exclusion value is not necessarily the same price that the seller would place on the land if he were to sell it outright. Although exclusion value is reflective of the relative values of the component land tracts, it cannot be said that it is the same as a purchase price. Furthermore, and of utmost importance, the purpose for the values listed on Exhibit E is clear and unambiguous.

Next, the debtor relies on Exhibit F of the Purchase Contract, entitled "Partial Release Payment Schedule per Exhibit C Item 6." Exhibit F is a list similar to that on Exhibit E and provides the percentages and amounts the debtor would have to pay in order to obtain the release of certain tracts pledged under the deeds of trust in the event of a sale. The section of Exhibit F relevant to our discussion is reproduced below:

---

### Exhibit F
### Partial-Release Payment Schedules per Exhibit C Item 6

| County | Description | Partial Release Amount (25% Premium over Contract Price) before Application of Principal Payments |
|---|---|---|
| Pamlico | Neuse River- Pierce Creek | 17,500,000 |
| Pamlico | Broad Creek | 7,875,000 |
| Pamlico | Bay River- Smith Creek | 9,375,000 |

| | | |
|---|---|---|
| Pamilco | Goose Creek Island- Eastman Creek | 750,000 |
| Pamlico | Rodman / Caroon | 250,000 |
| Pamlico | Spring Creek | 125,000 |
| Craven | Carolina Pines | 3,125,000 |
| Craven | Williams - (near Oakview subdivision) | 3,375,000 |
| Jones / Craven | Trent River - Island Creek | 10,937,500 |
| Brunswick | Mallory | 6,625,000 |
| Pender | Northeast Cape Fear River - Castle Hayne - Rocky Point | 4,687,500 |
| Onslow | Henderson Tract | 2,250,000 |
| Timberland | Any parcels of land not scheduled above - Various Counties | <u>14,375,000</u> |
| | Release Fee is $1,500 per Acre for Individual Timber Tracts | |
| | **Total (Reflects 25% Premium)** | **<u>81,250,000</u>** |

Above a column of values in Exhibit F is a heading entitled "Partial Release Amount (25% Premium over Contract Price) before Application of Principal Payments." Debtor correctly points out that some of the values listed in the Partial Release Amount column of Exhibit F are 25% greater than the corresponding values listed on Exhibit E. In other words, the debtor argues that the release prices in Exhibit F were derived from the values in Exhibit E. Debtor argues that the use of the term "*Contract Price*" in Exhibit F is further evidence that the values listed on Exhibit E were the individual *purchase* prices for each tract of land and that the Purchase Contract was "severable."

The court finds little to support the debtor's argument. An examination of the values listed in the Partial Release Amount column of Exhibit F reveals that the release price for the Broad Creek tract is an approximate 65.79% increase from the value listed on Exhibit E. Furthermore, the release price listed in Exhibit F for the Bay River tract is an approximate 7.14% increase from the value listed on Exhibit E. The singular use of the term "Contract Price" in Exhibit F does not establish that the values listed on Exhibit E were actually individual purchase prices, particularly when these release prices are not consistently a 25% increase over the values of Exhibit E. The Purchase Contract specifically identified what values were used for the exclusion clause and what values were release prices. Page two of the Purchase Contract defines the term "Purchase Price" to mean "the sum of SIXTY FIVE MILLION AND NO/100 DOLLARS[,]" not, as the debtor argues, an accumulation of the values listed on Exhibit E.

Finally, included in each purchase money deed of trust recorded in the counties in which collateral is located is the following recital: "Witnesseth, That whereas, the Grantor is indebted to the Beneficiary in the principal sum of FIFTY-SIX MILLION AND NO/100 Dollars ($56,000,000.00) as evidenced by a Promissory Note of even date herewith, the terms of which are incorporated by reference."[2] If the parties had intended for each parcel to have individually negotiated prices, the purchase money deeds of trust could have included that agreed price for whatever specific land was pledged under them. Instead, the purchase money deeds of trust show that the land pledged under them secured the entire balance of the purchase money note. This is in

---

[2] The purchase money deeds of trust were modified and amended in January of 2011, such that "The principal sum of 'Fifty-Six Million and No/100 Dollars ($56,000,000.00)' listed on page 1 of the Deed of Trust is hereby amended to be the principal sum of 'Fifteen Million and No/100 Dollars ($15,000,000.00).'"

13

accord with the clear and unambiguous meaning of the Purchase Contract that the land was sold for the unitary purchase price of $65,000,000.

In summary, N.C. Gen. Stat. § 45-21.38 is inapplicable because it "only prohibits a mortgagee or trustee in a purchase money situation from obtaining a deficiency judgment." In re Fuller, 94 N.C. App. 207, 380 S.E.2d 120 (N.C. Ct. App. 1989). Bate Land Company is not attempting to foreclose on any of the debtor's property, nor seeking a deficiency judgment, therefore the anti-deficiency statute is inapplicable and it will not supply the acceptance necessary for completion of the prepetition transfer. The clear and unambiguous contents of Exhibits E and F to the Purchase Contract can similarly not provide the debtor with either acceptance of its special warranty deed or a determination of the value of the tracts it proposed to transfer.

In the absence of the theory advanced by the debtor that N.C. Gen. Stat. § 45-21.38 allows it to unilaterally return land sold to it by Bate Land Company, acceptance of a deed is determined by the principles of delivery and acceptance. Here, Bate Land Company has been adamant that it did not solicit and does not accept the Broad Creek and Bay River tracts conveyed to it by way of the special warranty deed. Therefore, the special warranty deed fails for want of acceptance. The objection to claim is **DENIED**, and the motion to set aside the special warranty deed is **GRANTED**.

**SO ORDERED.**

**END OF DOCUMENT**